**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **VALERIE MYERS, INDIVIDUALLY AND AS ADMINISTRATRIX FOR THE ESTATE OF JEFFREY MYERS, *DECEASED***<br>431 East Bainbridge Street<br>Elizabethtown, PA 17022,<br>*Plaintiffs*<br>v.<br><br>**DAVID NICHOLS, D.O.**<br>2 Stone Harbor Blvd.<br>Cape May Courthouse, NJ 08210<br><br>And<br><br>**CAPE MAY REGIONAL EMERGENCY PHYSICIANS**<br>2 Stone Harbor Blvd.<br>Cape May Courthouse, NJ 08210<br><br>And<br><br>**CAPE MAY REGIONAL HOSPITAL**<br>2 Stone Harbor Blvd.<br>Cape May Courthouse, NJ 08210<br><br>*Defendants* | **CASE NO.:**<br><br><br>**CIVIL ACTION**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Valerie Myers, Individually and as Administratrix of the Estate of Jeffrey Myers, *Deceased*, by and through her undersigned counsel, Friedman Schuman Layser, P.C., by way of Complaint against defendants Cape May Regional Hospital, Cape May Regional Emergency Physicians, David Nichols, D.O., ABC Corporations I-III and John Does I-III, say:

**PARTIES**

1. Plaintiff Valerie Myers, Individually and as Administratrix of the Estate of Jeffrey Myers, Deceased is an adult individual, citizen and resident of the Commonwealth of Pennsylvania, residing at 431 East Bainbridge Street, Elizabethtown, PA 17022.

2. At all times relevant hereto, Plaintiff was married to the *decedent*, Jeffrey Myers.

3. On August 29, 2023, Mr. Myers died as a result the negligence of the defendants' collective failures to meet accepted standards.

4. On or about November 9, 2023, Plaintiff, Valerie Myers was appointed Administratrix of the Estate of Jeffrey Myers. A copy of the short certificate is attached as Exhibit "A".

5. Defendant David Nichols, D.O. (hereinafter referred to as "Dr. Nichols") is an emergency medicine physician, and at all times relevant hereto, practiced at Cape May Regional Hospital.

6. At all times relevant hereto, Dr. Nichols acted as the actual, apparent and/or ostensible agent, employee and/or servant of Cape May Regional Hospital.

7. At all times relevant hereto, Dr. Nichols was licensed to practice medicine in the State of New Jersey and held himself out to the public, including plaintiffs, as a board-certified ER Physician capable of rendering competent and skilled medical care and treatment to individuals, including plaintiff Jeffrey Myers.

8. Plaintiffs are asserting a medical professional liability claim against Dr. Nichols.

9. Defendant Cape May Regional Hospital is a partnership, corporation or other legal entity, organized and existing under the laws of the State of New Jersey, with a business address at 2 Stone Harbor Blvd. Cape May Courthouse, NJ 08210, and which owns, operates and maintains a hospital located at 2 Stone Harbor Blvd., Cape May Courthouse, NJ 08210 and at all times relevant hereto was engaged in the provision of medical care and services to the public, including plaintiff Jeffrey Myers, at that address.

10. At all relevant times, Cape May Regional Hospital owned, maintained, operated, and/or controlled a hospital and medical practices and employed physicians, graduate medical trainees

(interns, residents, and fellows), nurses, physician assistants, nurse practitioners, therapists, technicians and other agents, servants, and employees who purportedly possessed skill and training for the purposes of providing medical care and services to the general public, and plaintiff Jeffrey Myers in particular.

11. At all relevant times hereto, Cape May Regional Hospital and its affiliated health systems and/or physician practice groups, were acting by and through their actual, apparent or ostensible agents, servants and/or employees, who themselves were acting at all times within the course and scope of their actual, apparent and/or ostensible agency and/or employment with Defendant and under their exclusive control, and are liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, master-servant, agency, and right of control. These agents acted or failed to act in the manner specifically described in the enumerated counts of this Complaint. The identities of these agents, servants and employees are: David Nichols, D.O. and other physicians, graduate medical trainees (interns, residents and fellows), physician assistants, nurse practitioners, nurses, therapists, technicians and other medical and ancillary staff who attended to plaintiff Jeffrey Myers, including those individuals whose names appear in the medical chart on those dates, but are indecipherable to plaintiffs, whose names are only known to defendants and not known or knowable to plaintiffs after reasonable investigation, and/or whose names will require discovery from defendants.

12. Plaintiffs are asserting a medical professional liability claim against Cape May Regional Hospital for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the medical care and treatment of plaintiff Jeffrey Myers at Cape May Regional Hospital from August 28, 2023, through August 29, 2023.

13. Defendant Cape May Regional ER Physicians is a partnership, corporation or other legal entity, organized and existing under the laws of the State of New Jersey, with a business address at 2 Stone Harbor Blvd. Cape May Courthouse, NJ 08210, and which owns, operates and maintains an emergency medicine practice located at 2 Stone Harbor Blvd., Cape May Courthouse, NJ 08210 and at all times relevant hereto was engaged in the provision of medical care and services to the public, including plaintiff Jeffrey Myers, at that address.

14. At all relevant times, Cape May Regional ER Physicians owned, maintained, operated, and/or controlled an emergency medicine practice and employed physicians, and other agents, servants, and employees who purportedly possessed skill and training for the purposes of providing medical care and services to the general public, and plaintiff Jeffrey Myers in particular.

15. At all relevant times hereto, Cape May Regional ER Physicians were acting by and through their actual, apparent or ostensible agents, servants and/or employees, who themselves were acting at all times within the course and scope of their actual, apparent and/or ostensible agency and/or employment with Defendant and under their exclusive control, and are liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of respondeat superior, master-servant, agency, and right of control. These agents acted or failed to act in the manner specifically described in the enumerated counts of this Complaint. The identities of these agents, servants and employees are: David Nichols, D.O. and other physicians, physician assistants, nurse practitioners, nurses, therapists, technicians and other medical and ancillary staff who attended to plaintiff Jeffrey Myers, including those individuals whose names appear in the medical chart on those dates, but are indecipherable to plaintiffs, whose names are only known to defendants and not known or

knowable to plaintiffs after reasonable investigation, and/or whose names will require discovery from defendants.

16. Plaintiffs are asserting a medical professional liability claim against Cape May Regional ER Physicians for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the medical care and treatment of plaintiff Jeffrey Myers at Cape May Regional ER Physicians from August 28, 2023, through August 29, 2023.

**FACTUAL BACKGROUND**

17. On the evening of August 28, 2023, plaintiff Valerie Myers called for an ambulance for her husband, co-plaintiff Jeffrey Myers, after observing him having shortness of breath.

18. At the time, Mr. Myers was 69 years old.

19. The ambulance took Mr. Myers to the Emergency Room at Cape May Regional Hospital.

20. Defendant, Dr. Nichols, was the attending ER M.D.

21. At the hospital and after a CT scan, Mr. Myers was diagnosed with bilateral pulmonary emboli and was admitted to the emergency department.

22. The following is a partial initial timeline of events at Cape May Regional Emergency for Mr. Myers:

0317 Arrived in the E.R. from home. Temp 101. BP 105/58, HR 64, RR 22 Pulse ox: 85% on room air. Weight 200 lbs. BMI 30.4 (Jamie Crispin, RN) EKG - 68 BPM, atrial fibrillation, ventricular escape rhythm.

0326 IV started. (Jamie Crispin, RN)

0402 Cefepime 2 gm. IV (Daniel Head, RN)

0411 Lethargic, bradycardia, respiratory distress. (Daniel Head, RN)

0421 Tylenol suppository. (Daniel Head, RN)

0427 CTA, chest, abdomen - **Positive for moderate to large volume bilateral pulmonary emboli.** (Richard E. Werman, D.O.)

CTA carotids and head normal.

0518 EKG - 49 beats/minute

0522 Heparin IV 7500 units IV Heparin 25,000 units IV Hydromorphone 1 mg. IV (Daniel Head, RN)

0529 Complains of abdominal pain. (Daniel Head, RN)

0548 Call to Cooper to transfer (Brian Nichols, D.O.)

0605 Insulin 9.07 units IV. (Daniel Head, RN)

0613 Impression: Sepsis, abnormal renal function, sinus bradycardia, pulmonary embolism, acute non-ST segment elevation myocardial infarction, diabetic ketoacidosis. Patient is critically ill with a high probability of imminent or life-threatening deterioration. (Brian Nicholls, D.O.)

0614 **TRANSFER DECISION TIME - Condition critical regular care. Priority of transfer is emergent. Receiving hospital has accepted the patient, destination Cooper. Accepting provider a Dr. Mandel.** (Brian Nichols, D.O.)

23. Based on Dr. Nichols' 0614 note, Dr. Nichols was aware that Mr. Myers was in critical condition.

24. Based on Dr. Nichols' 0614 note, Dr. Nichols was aware that Mr. Myers needed emergent transfer.

25. Dr. Nichols was made aware by Cooper University Hospital that they did not have available beds and could not immediately accept Mr. Myers.

26. Despite this knowledge, Dr. Nichols refused to admit the patient to the hospital.

27. Despite this knowledge, Dr. Nichols failed to properly seek other available medical institutions that could care for Mr. Myers' critical and emergent condition.

28. On presentation, Mr. Myers did not have diabetic ketoacidosis because his urine ketones were negative.

29. Dr. Nichols attributed his anion gap to diabetic ketoacidosis but that was, in fact, attributable to lactic acidosis from shock due to the pulmonary emboli.

30. Shock is a state in which there is inadequate blood flow to the brain and other organs.

31. Dr. Nichols should have been aware that the peripheral tissues (fat, skeletal muscle) and organs therefore have to use anaerobic metabolism to create energy and a byproduct of this is lactic acid.

32. It is well known to physicians, including emergency department physicians, that lactic acid is a common cause of anion gap as well as acidification of the blood (i.e. acidemia).

33. Dr. Nichols improperly ordered an insulin drip for his high blood glucose levels.

34. At or around 0800 hours Mr. Myers had EKG changes showing an impending heart attack, but Dr. Nichols did not come to the bed side.

35. Mr. Myers coded multiple times in the Defendant's hospital emergency department.

36. Mr. Myers coded when he became unresponsive at 10:20 a.m. and required intubation.

37. This code was attributable to progressive acidemia from lactic acidosis and an inability to oxygenate blood because of the untreated pulmonary emboli.

38. Mr. Myers had another PEA arrest that was treated with epinephrine and other ALCS interventions.

39. Mr. Myers then developed evidence of a heart attack with reported ST elevation on EKG with elevated troponin and ventricular tachycardia requiring defibrillation.

40. These findings all represent side effects of the pulmonary emboli which were well known to and improperly treated by Dr. Nichols.

41. Dr. Nichols' failure to properly treat, admit to an ICU and/or emergently transfer Mr. Myers led to the worsening side effects of the pulmonary emboli, shock, lactic acidosis and the need for resuscitation.

42. Mr. Myers previous heart condition (coronary calcifications found on CT) were known to Dr. Nichols.

43. Dr. Nichols knew or should have known that Mr. Myers would not have adequate coronary reserve to withstand the stressors of shock from untreated pulmonary emboli.

44. The underlying cause of Mr. Myers' ST elevation, positive troponin and ventricular tachycardia was due to the untreated moderate to large volume pulmonary emboli well known to Dr. Nichols which led to the shock and acidemia.

45. If Mr. Myers had been properly treated and/or emergently transferred for his pulmonary emboli and resulting shock he would not have had the ST elevation, elevated troponin and ventricular tachycardia and would not have expired.

46. Dr. Nichols' failure to properly treat the pulmonary emboli, consult other institutions and/or admit Mr. Myers to defendants' hospital were the direct causes of Mr. Myers death.

47. On August 29, 2023, Mr. Myers passed away as a direct result of the negligent acts and omissions of the defendants.

**FIRST COUNT (NEGLIGENCE)**
**Plaintiffs v. Defendant David Nichols, D.O.**

48. The preceding paragraphs are incorporated by reference as though set forth herein their entirety.

49. Defendant Dr. Nichols was negligent and breached the standard of care by:

(a) failing to monitor, with adequate frequency, the condition of Mr. Myers's condition;
(b) failing to recognize impending organ failure;
(c) failing to timely identify, correct, repair and/or treat pulmonary emboli;
(d) failing to timely identify, correct, repair and/or treat cardiac status;
(e) failing to timely monitor patient status;
(f) failure to properly triage patient;
(g) failure to properly treat patient;
(h) failure to properly transfer patient;
(i) improperly prescribing dilaudid;
(j) improperly diagnosing diabetic ketoacidosis;
(k) improperly prescribing an insulin drip;
(l) failure to communicate with nursing;
(m) failure to communicate with Valerie Myers;
(n) failure to communicate with pharmacy;
(o) failure to order an ICU consult;
(p) failure to admit to ICU;
(q) failure to recognize anion gap was normal;
(r) failure to recognize EKG findings of QT prolongation was evidence of patient at risk for cardiac arrhythmia;
(s) failure to order thrombolytics;
(t) failure to consult interventional radiology and/or vascular surgery for thrombolytics;
(u) failure to call facilities other than Cooper University Hospital for transfer;
(v) failure to consult cardiologist;
(w) delay in intubating patient;
(x) improperly causing delay in treatment of patient;
(y) failure to recognize significant troponin elevation;
(z) failure to order regular vital signs;
(aa) failure to regularly take vital signs;
(bb) failure to respond to nurse request for medical intervention;
(cc) failure to recognize need for thrombolytics;
(dd) failure to see patient;
(ee) failure to examine patient after EKG showed signs and symptoms of cardiac arrest;
(ff) such other acts and omissions consisting of carelessness and negligence as may become evident during the course of discovery in this action.

50. The negligence of defendant David Nichols, D.O. was a substantial factor in causing the injuries, losses and death set forth above.

51. The negligence of defendant David Nichols, D.O. increased the risk of harm to plaintiff Jeffrey Myers.

WHEREFORE, Plaintiffs demand judgment for damages upon this Count of the Complaint against defendants, individually, jointly and/or severally, together with costs of suit, interest and attorneys' fees.

**SECOND COUNT (NEGLIGENCE)**
**Plaintiffs v. Cape May Regional Hospital**

52. The preceding paragraphs are incorporated by reference as though set forth herein their entirety.

53. The negligence and carelessness of Cape May Regional Hospital by and through its nurses, emergency department and Dr. Nichols, consisted of one or more of the following:

(a) failing to monitor, with adequate frequency, the condition of Mr. Myers's condition;
(b) failing to recognize impending organ failure;
(c) failing to timely identify, correct, repair and/or treat pulmonary emboli;
(d) failing to timely identify, correct, repair and/or treat cardiac status;
(e) failing to timely monitor patient status;
(f) failure to properly triage patient;
(g) failure to properly treat patient;
(h) failure to properly transfer patient;
(i) improperly prescribing dilaudid;
(j) improperly diagnosing diabetic ketoacidosis;
(k) improperly prescribing an insulin drip;
(l) failure to communicate with nursing;
(m) failure to communicate with Valerie Myers;
(n) failure to communicate with pharmacy;
(o) failure to order an ICU consult;
(p) failure to admit to ICU;
(q) failure to recognize anion gap was normal;
(r) failure to recognize EKG findings of QT prolongation was evidence of patient at risk for cardiac arrhythmia;
(s) failure to order thrombolytics;
(t) failure to consult interventional radiology and/or vascular surgery for thrombolytics;
(u) failure to call facilities other than Cooper University Hospital for transfer;
(v) failure to consult cardiologist;
(w) delay in intubating patient;
(x) improperly causing delay in treatment of patient;
(y) failure to recognize significant troponin elevation;
(z) failure to order regular vital signs;

(aa) failure to regularly take vital signs;
(bb) failure to respond to nurse request for medical intervention;
(cc) failure to recognize need for thrombolytics;
(dd) failure to see patient;
(ee) failure to examine patient after EKG showed signs and symptoms of cardiac arrest;
(ff) such other acts and omissions consisting of carelessness and negligence as may become evident during the course of discovery in this action.

54. The negligence of defendant Cape May Regional Hospital was a substantial factor in causing the injuries and losses set forth above.

55. The negligence of defendant Cape May Regional Hospital increased the risk of harm to plaintiff Jeffrey Myers.

56. Defendant Cape May Regional Hospital is vicariously liable for the acts and omissions of Dr. Nichols, as well as the other physicians, graduate medical trainees (interns, residents, and fellows), nurses, physician assistants, nurse practitioners, therapists, technicians and other agents, servants, and employees of Cape May Regional Hospital involved in the care and treatment provided to plaintiff Jeffrey Myers at Cape May Regional Hospital from August 28, 2023 through August 29, 2023.

WHEREFORE, Plaintiffs demand judgment for damages upon this Count of the Complaint against defendants, individually, jointly and/or severally, together with costs of suit, interest and attorneys' fees.

**THIRD COUNT (NEGLIGENCE)**
**Plaintiffs v. Cape May Regional Physicians**

57. The preceding paragraphs are incorporated by reference as though set forth herein their entirety.

58. The negligence and carelessness of Cape May Regional Hospital by and through its nurses, emergency department and Dr. Nichols, consisted of one or more of the following:

(a) failing to monitor, with adequate frequency, the condition of Mr. Myers's condition;
(b) failing to recognize impending organ failure;
(c) failing to timely identify, correct, repair and/or treat pulmonary emboli;
(d) failing to timely identify, correct, repair and/or treat cardiac status;
(e) failing to timely monitor patient status;
(f) failure to properly triage patient;
(g) failure to properly treat patient;
(h) failure to properly transfer patient;
(i) improperly prescribing dilaudid;
(j) improperly diagnosing diabetic ketoacidosis;
(k) improperly prescribing an insulin drip;
(l) failure to communicate with nursing;
(m) failure to communicate with Valerie Myers;
(n) failure to communicate with pharmacy;
(o) failure to order an ICU consult;
(p) failure to admit to ICU;
(q) failure to recognize anion gap was normal;
(r) failure to recognize EKG findings of QT prolongation was evidence of patient at risk for cardiac arrhythmia;
(s) failure to order thrombolytics;
(t) failure to consult interventional radiology and/or vascular surgery for thrombolytics;
(u) failure to call facilities other than Cooper University Hospital for transfer;
(v) failure to consult cardiologist;
(w) delay in intubating patient;
(x) improperly causing delay in treatment of patient;
(y) failure to recognize significant troponin elevation;
(z) failure to order regular vital signs;
(aa) failure to regularly take vital signs;
(bb) failure to respond to nurse request for medical intervention;
(cc) failure to recognize need for thrombolytics;
(dd) failure to see patient;
(ee) failure to examine patient after EKG showed signs and symptoms of cardiac arrest;
(ff) such other acts and omissions consisting of carelessness and negligence as may become evident during the course of discovery in this action.

59. The negligence of defendant Cape May Regional Hospital was a substantial factor in causing the injuries and losses set forth above.

60. The negligence of defendant Cape May Regional Hospital increased the risk of harm to plaintiff Jeffrey Myers.

61. Defendant Cape May Regional Hospital is vicariously liable for the acts and omissions of Dr. Nichols, as well as the other physicians, graduate medical trainees (interns, residents, and fellows), nurses, physician assistants, nurse practitioners, therapists, technicians and other agents, servants, and employees of Cape May Regional Hospital involved in the care and treatment provided to plaintiff Jeffrey Myers at Cape May Regional Hospital from August 28, 2023 through August 29, 2023.

WHEREFORE, Plaintiffs demand judgment for damages upon this Count of the Complaint against defendants, individually, jointly and/or severally, together with costs of suit, interest and attorneys' fees

**FOURTH COUNT (NEGLIGENCE)**
**Plaintiffs v. ABC Corporations I through III**

62. The preceding paragraphs are incorporated by reference as though set forth herein their entirety.

63. In some manner (the specifics of which are currently unknown to plaintiffs), defendants ABC Corporations I through III (being fictitious names), participated in the treatment of plaintiff Jeffrey Myers while he was admitted to Virtual Voorhees Hospital from August 28, 2023 through August 29, 2023, and in so doing was/were careless and negligent in a similar manner as set forth in the described carelessness and negligence of the other defendants.

64. As a result of the aforesaid carelessness and negligence of defendants ABC Corporations I through III, plaintiffs were caused to sustain great damage and injury as set forth above.

WHEREFORE, Plaintiffs demand judgment for damages upon this Count of the Complaint against defendants, individually, jointly and/or severally, together with costs of suit, interest and attorneys' fees.

**FIFTH COUNT (NEGLIGENCE)**
**Plaintiffs v. John/Jane Does I through III**

65. The preceding paragraphs are incorporated by reference as though set forth herein in their entirety.

66. In some manner (the specifics of which are currently unknown to plaintiffs), defendants John/Jane Does I through III participated in the treatment of plaintiff Jeffrey Myers while he was admitted to Cape May Regional Hospital from August 28, 2023 through August 29, 2023, and in so doing was/were careless and negligent in a similar manner as set forth in the described carelessness and negligence of the other defendants.

67. As a result of the aforesaid carelessness and negligence of defendants John/Jane Does I through III, plaintiffs were caused to sustain great damage and injury as set forth above.

WHEREFORE, Plaintiffs demand judgment for damages upon this Count of the Complaint against defendants, individually, jointly and/or severally, together with costs of suit, interest and attorneys' fees.

**SIXTH COUNT (SURVIVAL ACT)**
**Plaintiff, Valerie Myers, Individually And As Administratrix For The Estate Of Jeffrey Myers, Deceased v. Defendants**

68. The preceding paragraphs are incorporated by reference as though set forth herein in their entirety.

69. At all times relevant hereto, Plaintiff, Valerie Myers was the lawful wife of plaintiff-decedent, Jeffrey Myers.

70. As a result of the negligent acts and omissions of the defendants, as described more fully herein, Plaintiff-decedent, Jeffrey Myers, suffered catastrophic, permanent injuries and death.

71. On August 29, 2023, Jeffrey Myers passed away.

72. As a result, Plaintiff, Valerie Myers makes claim for all losses recoverable under Section 2A:15-3 of the New Jersey Survival Act.

73. On behalf of the Estate of Jeffrey Myers, Plaintiff claims damages for all economic losses as well as losses for conscious physical discomfort, pain and suffering, loss of enjoyment of life and life' s pleasures, and all other damages and losses recoverable under the Survival Act and the decisional law interpreting the Act.

WHEREFORE, Plaintiffs demand judgment for damages upon this Count of the Complaint against defendants, individually, jointly and/or severally, together with costs of suit, interest and attorneys' fees.

**SEVENTH COUNT (WRONGFUL DEATH ACT)**
**Plaintiff, Valerie Myers, Individually And As Administratrix For The Estate Of Jeffrey Myers, Deceased v. Defendants**

74. The previous paragraphs are incorporated herein.

75. Plaintiff, Valerie Myers, individually brings this Wrongful Death Action on behalf of the Estate of Jeffrey Myers, deceased, under and by virtue of the New Jersey and Pennsylvania Wrongful Death Acts, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

76. Under the Wrongful Death Act, Jeffrey Myers, deceased, left surviving as her sole heirs-at-law: his wife, Valerie Myers. This individual, who has been notified of the commencement of this action, are listed below, and are the beneficiaries entitled to recover damages under the Wrongful Death Act:

a. Valerie Myers (wife)

77. As a result of the negligent acts and omissions of the Defendants, as described more fully herein, Plaintiff-decedent, Jeffrey Myers, suffered catastrophic, permanent and fatal

injuries and death resulting in the entitlement to damages by the aforementioned beneficiaries under the Wrongful Death Act.

78. Plaintiff Valerie Myers, Individually claims the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting the Act.

79. Plaintiff Valerie Myers, Individually claims damages for the pecuniary losses suffered by reason of the death of Jeffrey Myers, including, damages for all medical expenses, funeral and burial expenses, and the costs of estate administration necessitated by reason of the injuries which caused Jeffrey Myers's death.

80. Plaintiff Valerie Myers, Individually claims damages for the loss of earnings, maintenance, support, comfort, care, society, guidance, tutelage and/or other losses recognized under the Wrongful Death Act, which the Wrongful Death beneficiaries would have received from Jeffrey Myers had her death not occurred.

81. Plaintiff Valerie Myers, Individually claims damages for the monetary support that the decedent could have been expected to provide to the Wrongful Death beneficiaries during her lifetime had her death not occurred.

82. Plaintiff Valerie Myers, Individually claims the loss of the pecuniary value of the services which the decedent could have been expected to provide to the Wrongful Death beneficiaries during her lifetime had her death not occurred.

**WHEREFORE,** Plaintiff respectfully demand judgment against Defendants individually, jointly, and severally for sums in excess of the local arbitration limits and in excess of Fifty Thousand ($50,000.00) Dollars, exclusive of costs, pre-judgment interest, and post-judgment interest.

**FRIEDMAN SCHUMAN LAYSER, P.C.**

Date: 11/27/2024

BY: ______________________________

DEREK R. LAYSER

*Attorney for Plaintiff*

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues in this action.

**FRIEDMAN SCHUMAN, P.C.**

Date: 11/27/2024

BY: ________________________________

DEREK R. LAYSER
*Attorney for Plaintiff*

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to R.4:25-4, Derek R. Layser, Esquire is hereby designated as trial counsel on behalf of plaintiffs.

**FRIEDMAN SCHUMAN, P.C.**

Date: 11/27/2024

BY: ______________________________
DEREK R. LAYSER
*Attorney for Plaintiff*

**CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)**

Plaintiffs, by and through their attorneys, hereby certify that the matter in controversy is not the subject of any other pending or contemplated judicial or arbitration proceeding. Plaintiffs are not currently aware of any other parties that should be joined in this action.

**FRIEDMAN SCHUMAN, P.C.**

Date: 11/27/2024 BY: ______________________________

DEREK R. LAYSER
*Attorney for Plaintiff*